1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CHRISTOPHER M. YOUNG, State Bar No. 238532
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone: (415) 703-5553
    Fax:  (415) 703-5843
8   Email:  Chris.Young@doj.ca.gov

9  Attorneys for Defendant Davis

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

   | | |
   |---|---|
   | **LYNNARD A. SMITH,** | CASE NO. C 07-4089 JSW |
   | Plaintiff, | |
   | **v.** | |
   | **STEVEN G. DAVIS,** | |
   | Defendant. | |

20

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**
**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MOTION FOR QUALIFIED IMMUNITY**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| INTRODUCTION | 2 |
| ISSUES PRESENTED | 3 |
| STATEMENT OF FACTS | 4 |
| ARGUMENT | 7 |
| I.  THIS ACTION MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES. | 7 |
| A.  Standard of Review | 7 |
| B.  Applicable Law Requiring Administrative Exhaustion Before Filing Suit | 8 |
| C.  Because He Did Not Include His Retaliation Claim in Any Inmate Appeal, Plaintiff Has Not Properly Exhausted Administrative Remedies. | 9 |
| 1.  Plaintiff submitted inmate appeal CTF-05-01320 following the alleged retaliatory action, but did not allege retaliation in that appeal.  Inmate Appeal CTF-05-01320 Did Not Exhaust Administrative Remedies for Plaintiff's Retaliation Claim. | 9 |
| 2.  Plaintiff submitted inmate appeal CTF-05-01802 following the alleged retaliatory action, but did not allege retaliation in that appeal. | 10 |
| II.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT. | 11 |
| A.  Summary Judgment Standard | 11 |
| B.  Plaintiff's First Amendment Right to Access the Court was not Hindered and Plaintiff was not Retaliated Against by Defendant. | 12 |
| 1.  No adverse action was taken against Plaintiff because of the protected conduct. | 13 |
| 2.  Plaintiff's First Amendment right to access the court was not chilled. | 14 |
| 3.  Defendant's actions advanced legitimate penological goals. | 14 |
| 4.  Conclusion | 15 |

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

i

**TABLE OF CONTENTS**  (continued)

Page

III.   DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.    15

    A.   Defendant is Entitled to Qualified Immunity Because Plaintiff Has
       Failed to Show Defendant's Actions Violated a Constitutional
       Right.    17

    B.   Defendant is Entitled to Qualified Immunity Because It Would Not
       Have Been Clear to a Reasonable Official in Defendant Davis'
       Position that His Conduct Was Unlawful in the Specific Factual
       Situation He Confronted.    17

CONCLUSION    18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

ii

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Creighton*
483 U.S. 635 (1987)                                                        16

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)                                                       12

*Behrens v. Pelletier*
516 U.S. 299 (1996)                                                       15

*Booth v. Churner*
532 U.S. 731 (2001)                                                         8

*Bradley v. Hall*
64 F.3d 1276 (9th Cir. 1995)                                              12

*Brosseau v. Haugen*
543 U.S. 194 (2004)                                                       17

*Bruce v. Ylst*
351 F.3d 1283 (9th Cir. 2003)                                            13

*Celotex v. Catrett*
477 U.S. 317 (1986)                                                   11, 12

*Davis v. Scherer*
468 U.S. 183 (1984)                                                       16

*Eisenberg v. Ins. Co. of No. Am.*
815 F.2d 1285 (9th Cir. 1987)                                            12

*First Nat'l Bank of Arizona v. Cities Service Co.*
391 U.S. 253 (1968)                                                       12

*Harlow v. Fitzgerald*
457 U.S. 800 (1982)                                               11, 15, 17

*Husky v. City of San Jose*
204 F.3d 893 (9th Cir. 2000)                                             13

*Jeffers v. Gomez*
267 F.3d 895 (9th Cir. 2001)                                             11

*Jones v. Bock*
127 S. Ct. 910 (2007)                                                      8

*Kelley v. Borg*
60 F.3d 664 (9th Cir. 1995)                                              16

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

iii

**TABLE OF AUTHORITIES**  (continued)

|  |  | Page |
|---|---|---|
| *Malley v. Briggs*<br>475 U.S. 335 (1986) | | 17, 18 |
| *Marquez v. Gutierrez*<br>322 F.3d 689 (9th Cir. 2003) | | 11 |
| *Martin v. City of Oceanside*<br>360 F.3d 1078 (9th Cir. 2004) | | 16 |
| *Mitchell v. Forsyth*<br>472 U.S. 511 (1985) | | 17 |
| *Mt. Healthy City Bd. of Educ. v. Doyle*<br>429 U.S. 274 (1977) | | 12, 18 |
| *Orin v. Barclay*<br>272 F.3d 1207 (9th Cir. 2001) | | 16 |
| *Porter v. Nussle*<br>534 U.S. 516 (2002) | | 8, 9 |
| *Pratt v. Rowland*<br>65 F.3d 802 (9th Cir. 1995) | | 13, 14 |
| *Resnick v. Hayes*<br>213 F.3d 443 (9th Cir. 2000) | | 13 |
| *Rhodes v. Robinson*<br>408 F.3d 559 (9th Cir. 2005) | | 13-15 |
| *Romero v. Kitsap County*<br>931 F.2d 624 (9th Cir. 1991) | | 16, 18 |
| *Sandin v. Conner*<br>515 U.S. 472 (1995) | | 13 |
| *Saucier v. Katz*<br>533 U.S. 194 (2001) | | 16, 17 |
| *Wilson v. Layne*<br>526 U.S. 603 (1999) | | 16 |
| *Woodford v. Ngo*<br>126 S. Ct. 2378 (2006) | | 8, 9 |
| *Wyatt v. Terhune*<br>315 F.3d 1108 (9th Cir. 2003) | | 2, 7, 11 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

iv

**TABLE OF AUTHORITIES  (continued)**

Page

**Constitutional Provisions**

United States Constitution
    First Amendment        2, 12-14, 18

**Statutes**

United States Code, Title 42
    § 1983        2, 8, 12, 14
    § 1997e(a)        7, 8

**Court Rules**

Federal Rule of Civil Procedure
    rule 12(b)        1, 2, 7
    rule 56        1
    rule 56(e)        12

**Other Authorities**

California Code of Regulations, Title 15
    § 3084.1(a)        9
    § 3084.2        9
    § 3268.2(a)(2)        6, 10

Prison Litigation Reform Act        2, 3, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

v

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CHRISTOPHER M. YOUNG, State Bar No. 238532
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5553
    Fax:  (415) 703-5843
8   Email:  Chris.Young@doj.ca.gov

9  Attorneys for Defendant Davis

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **LYNNARD A. SMITH,** | CASE NO. C 07-4089 JSW |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; NOTICE OF MOTION AND MOTION TO DISMISS; MOTION FOR QUALIFIED IMMUNITY** |
| v. | |
| **STEVEN G. DAVIS,** | |
| Defendant. | |

21    TO PLAINTIFF LYNNARD SMITH, IN PRO SE:

22    PLEASE TAKE NOTICE THAT under Federal Rule of Civil Procedure 56, Defendant

23  Davis (Defendant) moves for summary judgment on the grounds that (1) there is no genuine

24  issue as to any material fact and that he is entitled to judgment as a matter of law; and (2)

25  Defendant is entitled to qualified immunity from damages.

26    PLEASE TAKE FURTHER NOTICE THAT Defendant moves for an order dismissing this

27  case without prejudice under the non-enumerated portion of Rule 12(b) of the Federal Rules of

28  Civil Procedure based on Plaintiff's failure to exhaust available administrative remedies as

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
                                                                        Case No. C 07-4089 JSW

1 | required by the Prison Litigation Reform Act.

2 |     PLEASE TAKE FURTHER NOTICE that the Court may look beyond the pleadings and

3 | decide disputed issues of fact when ruling on Defendant's non-enumerated Rule 12(b) motion.

4 | *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Additionally, Plaintiff may provide

5 | evidence to the Court to dispute that which is presented by Defendant. *Id.* & at n.14.

6 |     This motion is based on this notice of motion and motion, the accompanying memorandum

7 | of points and authorities, the supporting declarations, all pleadings, exhibits, and papers on file in

8 | this action, and any other matters properly before this Court.

9 | ## MEMORANDUM OF POINTS AND AUTHORITIES

10 | ## INTRODUCTION

11 |     Plaintiff Lynnard Smith (Plaintiff) brought this civil action under 42 U.S.C. § 1983. The

12 | Court recognized the following claim in its Order of Service: Plaintiff's claim of retaliation

13 | against Defendant for filing a disciplinary report against him, after Plaintiff filed an

14 | administrative grievance against Defendant.

15 |     Plaintiff and Defendant both worked in the kitchen at the Correctional Training Facility.

16 | Defendant's duty was to monitor inmate activity in the kitchen. Plaintiff was reprimanded for

17 | causing disturbances over the course of two days, resulting in his removal from the work site.

18 |     Plaintiff cannot provide evidence of any retaliatory action. Plaintiff was counseled that he

19 | would receive a disciplinary report if he continued to cause disturbances, and soon thereafter he

20 | created a disruption and was escorted out of his work assignment in the kitchen. Several days

21 | later, while a disciplinary report and witness statements were being prepared, Plaintiff filed an

22 | administrative grievance concerning the incident in the kitchen. Even if Plaintiff could show that

23 | the disciplinary report was a retaliatory act, he has not pled any chilling of his First Amendment

24 | rights, nor has he produced evidence that the security of the institution, as demonstrated through

25 | his guilty finding for refusal to obey orders, was not a legitimate penological interest. Therefore,

26 | Defendant is entitled to judgment as a matter of law.

27 |     Plaintiff submitted two inmate appeals in the months following the incidents which did not

28 | raise the retaliation claim. Before bringing a federal suit, an inmate must exhaust administrative

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss           *Smith v. Davis*
Case No. C 07-4089 JSW

2

1  remedies as to each claim. Since Plaintiff did not exhaust administrative remedies relating to the

2  retaliation claim, his suit should be dismissed without prejudice for failure to exhaust

3  administrative remedies.

4     Finally, even if a constitutional violation could be made out when viewing the facts in the

5  light most favorable to Plaintiff, a reasonable official in Defendant's position would not have

6  believed that his conduct in the situation confronted was unlawful. Plaintiff was warned he

7  would receive a disciplinary report, and several days later he filed an administrative grievance. A

8  reasonable officer would not have believed it was clearly unlawful to follow through on the

9  disciplinary report, simply because in the interim Plaintiff filed an administrative grievance. As

10  such, Defendant is entitled to qualified immunity.

11                                    **ISSUES PRESENTED**

12                                            **I.**

13     The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust administrative

14  remedies before filing civil-rights suits concerning prison conditions. Plaintiff did not include

15  his retaliation claim in any appeal before filing suit. Does the PLRA's exhaustion provision

16  require that the claim be dismissed?

17                                            **II.**

18     Prisoners may not be retaliated against for exercising their right of access to the courts,

19  which extends to access to established prison grievance procedures. Plaintiff refused to obey

20  Defendant's order, and was issued a disciplinary report. Plaintiff filed a grievance before he was

21  issued a final disciplinary report. Did issuance of the disciplinary report violate Plaintiff's

22  constitutional rights?

23                                            **III.**

24     Qualified immunity protects government officials from liability for civil damages when

25  their conduct does not violate clearly established rights of which a reasonable official would have

26  known. Defendant Davis warned Plaintiff that he would receive a disciplinary report if he

27  continued to be disruptive. When Plaintiff did not ameliorate his conduct, he was issued a

28  disciplinary report. Would a reasonable official in Defendant's position have believed that such

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
                                                                     Case No. C 07-4089 JSW

1  conduct violated Plaintiff's rights?

2  **STATEMENT OF FACTS**

3  1.  Plaintiff brought this action against a Correctional Officer working at the California

4  Department of Corrections and Rehabilitation (CDCR).  During the time period related to this

5  case, Defendant Davis worked at the Correctional Training Facility (CTF), Central Facility.

6  (Declaration Davis Supporting Def.'s Mot. Dismiss (Decl. Davis) ¶¶ 2-3.)  Defendant was a

7  Culinary Relief Officer assigned to the CTF Central Kitchen.  (*Id.*)

8  2.   On February 20, 2005, Correctional Supervising Cook Adams observed Plaintiff

9  exhibit "strong animosity" towards Defendant.  (Decl. Young Supp. Def.'s Mot. Summ. J. &

10  Mot. Dismiss (Decl. Young) ¶ 3, Ex. B at 2.)  Defendant was responsible for monitoring inmate

11  movements to and from the kitchen area.  (*Id.*)  Plaintiff did not respond when Defendant asked

12  Plaintiff where he was going.  (*Id.*)  Instead, Plaintiff began saying loudly "who are you with" in

13  Defendant's presence.  (*Id.*)

14  3.   Plaintiff had become disruptive on several occasions in the kitchen, by stating "who ya

15  with, who ya with," to which other inmates would respond back to Plaintiff by stating "the

16  Bloods." (Decl. Davis ¶ 4.)  The "Bloods" are a prison gang.  (*Id.*)

17  4.   On the morning of February 21, 2005, Defendant discussed Plaintiff's disruptive

18  behavior with Mr. Adams.  (*Id.* ¶ 5.)  Defendant and Mr. Adams agreed that if Plaintiff continued

19  his disruptive behavior, he would receive a written disciplinary action and would be escorted out

20  of the kitchen.  (*Id.*)  Defendant and Mr. Adams approached Plaintiff and gave him a verbal

21  warning that if he acted in a disruptive manner again, his actions would be documented in a

22  written disciplinary report.  (*Id.*)  Plaintiff had been counseled one day earlier by Mr. Adams that

23  his behavior towards Defendant was unacceptable.  (Decl. Young ¶ 3, Ex. B at 2.)

24  5.   Soon after, at approximately 5:40 a.m. that morning, Defendant was stationed near the

25  butcher shop.  (Decl. Davis ¶ 6.)  Plaintiff walked past and began loudly raising his voice.  (*Id.*)

26  Defendant then radioed for a search and escort officer to escort Plaintiff out of the kitchen.  (*Id.*)

27  Defendant was informed via institutional radio that no escorting officers were available, and that

28  he would need to personally escort Plaintiff out of the kitchen.  (*Id.*)  Defendant approached

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
Case No. C 07-4089 JSW

4

1   Plaintiff and instructed him that he was escorting him out of the kitchen for becoming disruptive.

2   (*Id.*) When Defendant attempted to take a physical hold of Plaintiff's left arm, Plaintiff pulled

3   away. (*Id.*) Defendant again instructed Plaintiff to cooperate, and again attempted to take a

4   physical hold of Plaintiff's left arm. (*Id.*) Plaintiff pulled away again, raising his right clenched

5   fist as if he were going to hit Defendant. (*Id.*) Defendant then activated his personal alarm and

6   drew his baton. (*Id.*) Responding staff arrived and escorted Plaintiff out of the kitchen in

7   mechanical hand restraints. (*Id.*)

8       6.    Correctional Supervising Cook Adams prepared a report of the incident on February

9   21, 2005, stating that Plaintiff approached him and asked "have I done anything devastating this

10  morning." (Decl. Young ¶ 4, Ex. C at 27-28.) Mr. Adams reported that Defendant then

11  approached and stated "inmate Smith, I am escorting you out of the culinary, let's go." (*Id.*)

12  When Defendant grasped Plaintiff's arm, Plaintiff pulled away. (*Id.*) Mr. Adams reported that

13  Defendant again reached for Plaintiff's arm, and Plaintiff again pulled away from Defendant.

14  (*Id.*) Finally, Defendant activated his personal alarm, drew his baton, and watched Plaintiff until

15  responding staff arrived to escort Plaintiff out of the kitchen. (*Id.*) While waiting for responding

16  staff to arrive, Plaintiff stood still and did not move. (*Id.*)

17      7.    Defendant reported the February 21 incident in Rules Violation Report CDC-I-02-05-

18  16, for the specific act of threatening a staff member. (Decl. Davis ¶¶ 7, 9.) On February 22 and

19  23, Defendant had his regular days off and did not work at the prison. (*Id.* ¶ 7.) Plaintiff's

20  regular days off were February 24 and 25. (Compl. ¶ 43.) On February 26, Plaintiff was

21  transferred to administrative segregation. (Decl. Young ¶ 5, Ex. D at 29.) Defendant signed the

22  final incident report on February 27, 2005. (*Id.* Ex. C at 3.)

23      8.    Plaintiff submitted a staff complaint on Friday, February 25, 2005, relating to the

24  February 21 incident, identified as inmate appeal CTF-05-00663. (Decl. Young ¶ 6, Ex. E at 30-

25  35.) Inmate appeal CTF-05-00663 was processed by the CTF Appeals Coordinator's office the

26  following Monday, February 28. (*Id.* at 30-31.) The informal level was bypassed, as is

27  appropriate for staff complaints. (*Id.*; *See* Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G).) The First

28  Level review was assigned on February 28, with a due date of April 12, 2005. (Decl. Young ¶ 6,

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

1   Ex. E at 31.) Inmate appeal CTF-05-00663 was partially granted at the First Level of review, in

2   that the complaint against Defendant was documented, processed, and filed. (*Id.* at 32-33.)

3       9.   Based on RVR CDC-I-02-05-16, Plaintiff was transferred to administrative segregation

4   on February 26, 2005. (Decl. Young ¶ 5, Ex. D at 29.)

5       10.   Plaintiff was issued a copy of RVR CDC-I-02-05-16 at 8:40 p.m. on March 5, 2005 by

6   Correctional Sergeant Verdesoto. (*Id.* ¶ 4, Ex. C at 3.)

7       11.   A hearing was held on April 15, 2005, and Plaintiff was found guilty of the lesser

8   charge for "Refusal to Obey Orders to be Escorted Out or Cuff Up." (*Id.*)

9       12.   On April 21, 2005, Plaintiff submitted inmate appeal CTF-05-01320. (*Id.* ¶ 7, Ex. F at

10  36-39.) Plaintiff alleged that CDC-115 Log No. I-02-05-16 was "falsified" because the original

11  charge of "Threatening a Public Official" was reduced to the charge of "Refusal to Obey Orders."

12  (*Id.*) Plaintiff requested that CDC-115 Log No. I-02-05-16 be dismissed and removed from his

13  file. (*Id.*) On May 31, 2005, Plaintiff was interviewed by CTF Appeals Coordinator Childress to

14  provide Plaintiff the opportunity to explain his appeal, at which time Plaintiff "stated in essence

15  that CCR 3268.2(a)(2) was violated.[1]" (*Id.* at 37.) Plaintiff asserted that staff witnesses Adams

16  and Baker affirmed that his behavior during the February 21 incident did not require the use of

17  mechanical restraints. (*Id.*) Appeal CTF-05-01320 was denied at the Second Level of review.

18  (*Id.* at 37-39.)

19      13.   Plaintiff submitted inmate appeal CTF-05-01320 to the Director's Level of Review,

20  which denied the appeal on March 29, 2006. (Decl. Grannis ¶ 7.)

21      14.   Plaintiff submitted inmate appeal CTF-05-01802 on June 5, 2005. (Decl. Young ¶ 9,

22  Ex. H at 41-47.) Plaintiff appealed the Institutional Classification Committee decision to release

23  him from administrative segregation and house him in North Facility, pending transfer to another

24  institution. (*Id.* ¶¶ 8-9, Exs. G, H.) Plaintiff requested that he be housed in Central Facility, and

25

26

27  1.   "(a) Mechanical means of physical restraint may be used only under the following circumstances: . . . (2) [w]hen a person's history, present behavior, apparent emotional state, or other conditions present a reasonable likelihood that he or she may become violent or attempt to escape."

28  Cal. Code Regs. tit. 15, § 3268.2(a)(2).

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss          *Smith v. Davis*
Case No. C 07-4089 JSW

6

1  that CDC-115 Log No. I-02-05-16 be removed from his central file. (*Id.* ¶ 9, Ex. H at 41.)

2  Plaintiff raised the following issues where he was directed to "describe problem" in Part A: (1)

3  his belief that Defendant Davis physically assaulted him during the February 21 incident; (2) his

4  contention that Defendant Davis used excessive force during the February 21 incident; (3) his

5  belief that Defendant Davis falsified CDC-115 Log No. I-02-05-16 to "cover up" his (Davis')

6  unprofessional conduct during the February 21 incident; and (4) that Defendant Davis also

7  submitted false information in his referral of the incident to the Monterrey District Attorney for

8  prosecution. (*Id.* at 41, 43-44.)  Plaintiff also noted that after he filed inmate appeal CTF-05-

9  00663, Defendant Davis was reassigned from the Central Kitchen to another post. (*Id.*)  Plaintiff

10  contended that Defendant Davis was attempting to "cover up" his "blatent (sic)

11  unprofessionalism, misconduct and assault on me, which is a direct repisal (sic) against me." (*Id.*

12  at 44.)

13      15.  The First Level of review was bypassed, and inmate appeal CTF-05-01802 was denied

14  at the Second Level on October 3, 2005. (*Id.* at 45-47.)  Plaintiff submitted the appeal to the

15  Director's Level, which denied the appeal on January 24, 2006. (Decl. Grannis ¶ 8.)

16                                    **ARGUMENT**

17                                        **I.**

18      **THIS ACTION MUST BE DISMISSED BECAUSE PLAINTIFF FAILED
        TO EXHAUST ADMINISTRATIVE REMEDIES.**

19

20  **A.    Standard of Review**

21      Non-exhaustion under § 1997e(a) is an affirmative defense; defendants have the

22  burden of raising and proving the absence of exhaustion. *Wyatt*, 315 F.3d at 1119.  A non-

23  exhaustion defense should be raised in an non-enumerated Rule 12(b) motion rather than in a

24  motion for summary judgment. *Id.*  In deciding such a motion, the district court may look

25  beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20.  If the court concludes

26  the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal without

27  prejudice. *Id.* at 1120.

28

**B.      Applicable Law Requiring Administrative Exhaustion Before Filing Suit**

The PLRA states that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal Law, by a [confined prisoner] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress provided in § 1997e(a) that an inmate must exhaust administrative avenues before bringing suit. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Id.* at 739. A prisoner must now exhaust administrative remedies even where the relief sought–such as monetary damages–cannot be granted by the administrative process. *Id.* at 734. Exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002). Finally, the Court "will not read futility or other exceptions into statutory exhaustion requirements . . . ." *Booth*, 532 U.S. at 741, n. 6.

The mandatory exhaustion requirement of § 1997e is especially pertinent in light of the Congressional objectives behind the PLRA. "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524-25; *see also Woodford v. Ngo*, 126 S. Ct. 2378 (2006). In *Woodford*, the Supreme Court held that "proper exhaustion" of the mandatory exhaustion requirement under § 1997e(a) is necessary. *Woodford*, 126 S. Ct. at 2382. "Proper" exhaustion of administrative remedies requires that grievances be filed within institutional time limits and without other procedural defects. *Id.* The Supreme Court reiterated that "prisoners must complete the administrative review process in accordance with the applicable procedural rules, . . . rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 127 S. Ct. 910, 922 (2007) (internal citations and quotation marks omitted) (quoting *Woodford*, 126 S. Ct. at 2384). Therefore, "compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Id.*

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

8

1    **C.    Because He Did Not Include His Retaliation Claim in Any Inmate Appeal, Plaintiff Has Not Properly Exhausted Administrative Remedies.**

2

3        In California, an inmate may appeal any "decision, action, condition, or policy which they

4    can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, §

5    3084.1(a); *see also Woodford*, 126 S. Ct. at 2383. An inmate must use a CDC Form 602

6    Inmate/Parolee Appeal form to describe the problem and the action requested. *See* Cal. Code

7    Regs. tit. 15, § 3084.2. In this case, Plaintiff did not allow prison officials the time and

8    opportunity to address his retaliation claim before filing suit in federal court. *Porter*, 534 U.S.

9    at 524-25; *see also Woodford v. Ngo*, 126 S. Ct. 2378 (2006).

10        **1.    Plaintiff submitted inmate appeal CTF-05-01320 following the alleged retaliatory action, but did not allege retaliation in that appeal. Inmate**

11        **Appeal CTF-05-01320 Did Not Exhaust Administrative Remedies for Plaintiff's Retaliation Claim.**

12

13        Plaintiff was transferred to administrative segregation on February 26, 2005, due to the

14    February 21 incident at the Central Kitchen. (St. Fact ¶ 9.) Also, Plaintiff was issued a copy of

15    RVR CDC-115 Log No. I-02-05-16 at 8:40 p.m. on March 5, 2005 by Correctional Sergeant

16    Verdesoto. (*Id.* ¶ 10.) Plaintiff asserts in his Complaint that his transfer to administrative

17    segregation and the disciplinary charge were retaliatory actions following his filing of appeal

18    number CTF-C-05-00663. (Compl. ¶ 54.) But, if Plaintiff felt that the imposed discipline was

19    retaliatory, Plaintiff did not inform prison officials of that fact by filing a timely appeal. In fact,

20    following the alleged retaliatory conduct, Plaintiff waited several weeks before submitting inmate

21    appeal CTF-05-01320, requesting that the disciplinary violation be dismissed. (*Id.* ¶ 12.) Yet,

22    appeal CTF-05-01320 does not assert that Defendant was retaliating against Plaintiff because

23    Plaintiff had filed a previous appeal against Defendant. (*Id.*; Decl. Young ¶ 7, Ex. F.)

24        Plaintiff submitted inmate appeal CTF-C-05-01320 on April 21, 2005, within a week of

25    the time Plaintiff was found guilty of "Refusal to Obey Orders to be Escorted Out or Cuff Up."

26    (St. Fact ¶¶ 11-12.) Plaintiff complained that CDC-115 Log No. I-02-05-16 was "falsified"

27    because the original charge of "Threatening a Public Official" was reduced to the charge of

28    refusal to obey orders. (*Id.*) Plaintiff requested that CDC-115 Log No. I-02-05-16 be dismissed

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
                                                                              Case No. C 07-4089 JSW

1  and removed from his file. (*Id.*) On May 31, 2005, Plaintiff was interviewed by CTF Appeals

2  Coordinator Childress to provide him the opportunity to explain his appeal, at which time

3  "appellant stated in essence that CCR 3268.2(a)(2) was violated." (*Id.*) This regulation allows

4  staff to use mechanical restraints when an inmate's behavior "present[s] a reasonable likelihood

5  that he or she may become violent. . . ." Cal. Code Regs. tit. 15, § 3268.2(a)(2). Plaintiff

6  asserted that staff witnesses Adams and Baker affirmed that his behavior during the February 21

7  incident did not require the use of mechanical restraints. (St. Fact ¶ 12.)

8    At the Second Level of Review, the institution denied Plaintiff's request to dismiss CDC-

9  115 Log No. I-02-05-16. (*Id.* ¶ 13.) Plaintiff did not present any additional information to

10  substantiate his claim to dismiss the disciplinary violation. (*Id.*) Plaintiff submitted inmate

11  appeal CTF-05-01320 to the Director's Level of Review, which denied the appeal on March 29,

12  2006. (Decl. Grannis ¶ 7.) Inmate appeal CTF-05-01320 addressed the guilty finding for CDC-

13  115 Log No. I-02-05-16. (St. Fact ¶ 12.) The only issues that Plaintiff could have exhausted

14  through appeal CTF-05-01320 were those addressed in the appeal. Plaintiff, therefore, did not

15  exhaust his claim that CDC-115 Log No. I-02-05-16 was issued as a retaliatory gesture for his

16  use of the appeals system through inmate appeal CTF-05-01320.

17    **2.    Plaintiff submitted inmate appeal CTF-05-01802 following the alleged**
18       **retaliatory action, but did not allege retaliation in that appeal.**

19    Plaintiff submitted inmate appeal CTF-05-01802 on June 5, 2005. (St. Fact ¶ 14.)

20  Plaintiff was released from administrative segregation and housed in North Facility, and was

21  placed up for transfer to another institution. (*Id.*) Plaintiff requested that he be housed in Central

22  Facility, and that CDC-115 Log No. I-02-05-16 be removed from his central file. (*Id.*)

23    In inmate appeal CTF-05-01802, Plaintiff did not complain that CDC-115 Log No. I-02-

24  05-16 was issued in retaliation for his use of the grievance system. Instead, Plaintiff raised the

25  following issues: (1) his belief that Defendant Davis physically assaulted him during the

26  February 21 incident; (2) his contention that Defendant Davis used excessive force during the

27  February 21 incident; (3) his belief that Defendant Davis falsified CDC-115 Log No. I-02-05-16

28  to "cover up" his (Davis') unprofessional conduct during the February 21 incident; and (4) that

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss          *Smith v. Davis*
                                                                    Case No. C 07-4089 JSW

10

1  Defendant Davis also submitted false information in his referral of the incident to the Monterrey

2  District Attorney for prosecution. (*Id.*) In that appeal, Plaintiff notes that after he filed inmate

3  appeal CTF-05-00663, Defendant Davis was reassigned from the Central Kitchen to another

4  post. (*Id.*) Plaintiff contended that Defendant Davis was attempting to "cover up" his "blatent

5  (sic) unprofessionalism, misconduct and assault on me, which is a direct repisal (sic) against

6  me." (*Id.*)

7       Here, even when viewing the facts in the light most favorable to Plaintiff, there was no

8  indication that Plaintiff filed an inmate appeal complaining of retaliation based on protected

9  conduct. Plaintiff's inmate appeal CTF-05-01802 asserts that CDC-115 Log No. I-02-05-16 was

10  falsified, but does not indicate in the appeal that it was falsified in retaliation for Plaintiff's use of

11  the inmate appeals system. (*See* Decl. Young ¶ 9, Ex. H at 41, 43-44.) Instead, Plaintiff claims

12  that excessive force was used, that Defendant acted in an unprofessional manner, and that there

13  was a "cover-up" of the "misconduct." (St. Fact ¶ 14.) Appeal CTF-05-01802 does not address

14  the claim that Defendant's alleged retaliatory acts were in response to Plaintiff's use of the

15  inmate appeals system. (*See* Decl. Young ¶ 9, Ex. H.)

16       Plaintiff has not exhausted his retaliation claim against Defendant Davis. Since Plaintiff

17  has not exhausted non-judicial remedies as to the retaliation claim, the proper remedy is

18  dismissal without prejudice. *Wyatt*, 315 F.3d at 1120.

19                                    **II.**

20            **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.**

21  **A.    Summary Judgment Standard**

22       Summary judgment is not the "disfavored procedural shortcut" it once might have been

23  considered. *Celotex v. Catrett*, 477 U.S. 317, 327 (1986). Especially in its qualified immunity

24  context, it is especially well-regarded to "avoid excessive disruption of government and permit

25  resolution of many insubstantial claims." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see*

26  *also Marquez v. Gutierrez*, 322 F.3d 689 (9th Cir. 2003); *Jeffers v. Gomez*, 267 F.3d 895, 910

27  (9th Cir. 2001).

28       Summary judgment is proper when admissible evidence shows there is no genuine issue

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                          *Smith v. Davis*
                                                                        Case No. C 07-4089 JSW

1   as to any material fact and the moving party is entitled to judgment as a matter of law. The

2   Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon motion,
> against a party who fails to make a showing sufficient to establish the
> existence of an element essential to the party's case, and on which that
> party will bear the burden of proof at trial.

6   *Celotex*, 477 U.S. at 322-23. The non-moving party's failure of proof on an essential element of

7   its claims renders all other facts immaterial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S.

8   242, 254 (1986) (lack of evidence sufficient to meet heightened evidentiary standard justifies

9   granting summary judgment on claims requiring that quantum of proof).

10          A party opposing a motion for summary judgment must affirmatively show that a dispute

11  about a material fact is genuine, so that a reasonable jury could return a verdict for the non-

12  moving party. *Celotex*, 477 U.S. at 322-23. This standard requires that if any evidence produced

13  in opposition to Defendant's motion is "merely colorable" or "not significantly probative,"

14  Defendant's motion must be granted. *Anderson*, 477 U.S. at 249; *Eisenberg v. Ins. Co. of No.*

15  *Am.,* 815 F.2d 1285, 1288 (9th Cir. 1987). An opposition must go beyond the assertions and

16  allegations of the pleadings and set forth specific facts by producing competent evidence that

17  shows a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324. Thus, Plaintiff

18  may not rest on his complaint in opposing Defendant's motion, but must produce competent and

19  admissible evidence to defeat it. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253,

20  289 (1968).

21  **B.      Plaintiff's First Amendment Right to Access the Court was not Hindered
            and Plaintiff was not Retaliated Against by Defendant.**

22

23          A claim may be stated under § 1983 where a plaintiff alleges retaliation by state actors for

24  the exercise of his First Amendment rights. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S.

25  274, 283-84 (1977). Prisoners may not be retaliated against for exercising their right of access to

26  the courts, which extends to access to established prison grievance procedures. *Bradley v. Hall*,

27  64 F.3d 1276, 1279 (9th Cir. 1995). Retaliation claims brought by prisoners must be evaluated in

28  light of concerns over "excessive judicial involvement in day-to-day prison management, which

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                                    *Smith v. Davis*
                                                                                              Case No. C 07-4089 JSW

12

1   'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*,

2   65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In

3   particular, courts should "'afford appropriate deference and flexibility' to prison officials in the

4   evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.*

5   (quoting *Sandin*, 515 U.S. at 482). To survive summary judgment on his retaliation claim,

6   Plaintiff must present evidence of five basic elements: "1) an assertion that a state actor took

7   some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

8   that such action (4) chilled the inmate's exercise of his First Amendment Rights, and (5) the

9   action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d

10  559, 567-68 (9th Cir. 2005). Retaliation is not established simply by showing adverse activity by

11  the defendant after protected speech; rather, the plaintiff must show a nexus between the two.

12  *Husky v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). But, retaliatory motive may be

13  shown by the timing of the alleged retaliatory act, as well as by direct evidence. *Bruce v. Ylst*,

14  351 F.3d 1283, 1288-89 (9th Cir. 2003). An inmate claiming retaliation must allege that the

15  defendant's actions caused him some injury. *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.

16  2000).

17      **1.    No adverse action was taken against Plaintiff because of the
               protected conduct.**

18

19      *Rhodes v. Robinson* is very particular in that an inmate must allege that some adverse

20  action was taken against him because he took part in protected conduct, such as filing inmate

21  grievances. *Rhodes*, 408 F.3d at 567-68.

22      Here, Plaintiff alleges that he was retaliated against because he filed inmate appeal CTF-

23  05-00663. (Compl. ¶¶ 54-57, 59, 83-86.) But, disciplinary action was taken *before* Plaintiff filed

24  his inmate appeal. On February 21, 2005, Plaintiff was warned that he would be issued a Rules

25  Violation Report if he continued to act in a disruptive manner. (Decl. Davis ¶ 5-6, 8.) Plaintiff

26  obdurately continued to act in a disruptive manner, and would not comply with Defendant's

27  orders to be escorted out of the kitchen. (*Id.* ¶ 6.) Plaintiff twice pulled away from Defendant's

28  grasp, putting Defendant in apprehension of violence. (*Id.* ¶¶ 6-7.) Defendant then prepared the

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                                    *Smith v. Davis*
                                                                                        Case No. C 07-4089 JSW

13

1    disciplinary report, which even Plaintiff admits "was sitting on [the Watch Commander's] desk"

2    for the week following the incident. (Compl. ¶ 48.)

3         Plaintiff claims that Defendant "did not sign or authorize his constructed fabricated report

4    'RVR CDC-115 Log No. I-02-05-16' until after having knowledge of Plaintiff's filed Inmate

5    Appeal 602/Citizen Complaint Log No. CTF-05-00663, which was (sic) retaliatory actions. . . ."

6    (Compl. ¶ 54.)  The date of signature is immaterial, when it is undisputed that the disciplinary

7    action was instigated on the morning of the incident in the Central Kitchen.  Therefore, there is

8    no evidence to support Plaintiff's claim that disciplinary action was taken because of his use of

9    the inmate appeals system.  It is clear from the evidence that Plaintiff utilized the inmate appeals

10    system following the instigation of discipline, and Plaintiff cannot provide evidence of any

11    retaliatory action.

12         **2.**    **Plaintiff's First Amendment right to access the court was not chilled.**

13         As part of a First Amendment retaliation claim, a Plaintiff must also show that his

14    constitutional rights have been chilled. *Rhodes*, 408 F.3d at 567-68.  Plaintiff does not state, and

15    nothing in Plaintiff's papers indicate in any way, that he was chilled from exercising his First

16    Amendment rights.

17         Directly after being found guilty of "Refusal to Obey Orders to be Escorted Out or to Cuff

18    Up," Plaintiff submitted inmate appeal CTF-05-01320. (St. Fact ¶ 12.)  Following the

19    Classification Committee hearing recommending Plaintiff's transfer to another prison, Plaintiff

20    submitted inmate appeal CTF-05-01802. (*Id.* ¶ 14.)  Contrary to evidence that Plaintiff's First

21    Amendment rights were chilled, the record shows that Plaintiff continued to use the grievance

22    process.

23         **3.**    **Defendant's actions advanced legitimate penological goals.**

24         Finally, Plaintiff must allege that there is no valid penological justification for the denial

25    of his constitutional rights. *Rhodes*, 408 F.3d at 567-68.  A prisoner suing prison officials under

26    § 1983 for retaliation must show that the retaliatory action did not advance legitimate penological

27    goals such as preserving institutional order and discipline. *Pratt*, 65 F.3d at 806.  In *Pratt*, the

28    court made clear that the plaintiff "bears the burden of pleading and proving the absence of

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

1  legitimate correctional goals for the conduct of which he complains." *Id.*  On summary

2  judgment, if the plaintiff can produce evidence making such a showing, then the burden shifts to

3  the prison official to produce evidence showing that the retaliatory action was narrowly tailored

4  to advance a legitimate correctional goal. *Rhodes*, 380 F.3d at 1130.

5        Here, Plaintiff only pleads that the disciplinary charges were used to "cover up"

6  Defendant's misconduct on February 21, 2005.  (Compl. ¶ 55.)  Prison officials have a legitimate

7  correctional goal to maintain order and security.  Defendant counseled Plaintiff on the morning

8  of the incident that there would be disciplinary consequences if Plaintiff did not refrain from

9  disruptive behavior.  (Decl. Davis ¶ 5.)  The prison disciplinary system provides incentives for

10  appropriate behavior and consequences for inappropriate behavior.  It is a legitimate penological

11  goal to create a system which maintains order and safety in the prison.

12        All alleged actions, including the issuance of a Rules Violation Report, Plaintiff's transfer

13  to administrative segregation, Plaintiff's guilty finding for "Refusal to Obey Orders," Plaintiff's

14  transfer to another facility, and Plaintiff's eventual transfer to another prison, were taken to

15  preserve institutional security and order.  Plaintiff's hostile behavior towards Defendant was

16  correctly addressed through disciplinary processes for the well-being of both Plaintiff and

17  Defendant, and other inmates and staff.  (*See* Decl. Davis ¶ 8.)

18      **4.    Conclusion**

19        The admissible evidence shows there is no genuine issue as to any material fact and that

20  Defendant is entitled to judgment as a matter of law.  Plaintiff's retaliation claim, including both

21  his request for injunctive relief and the request for damages, should be dismissed.

22                                                         **III.**

23      **DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**

24        Qualified immunity "'shield[s] [government agents] from liability for civil damages

25  insofar as their conduct does not violate clearly established statutory or constitutional rights of

26  which a reasonable person would have known.'"  *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)

27  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The general rule of qualified

28  immunity is intended to provide government officials with the ability to 'reasonably anticipate

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                         *Smith v. Davis*
Case No. C 07-4089 JSW

15

1   when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S.

2   635, 646 (1987) (citing *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). A ruling on a qualified

3   immunity claim should be made "at the earliest possible stage in litigation" "so that the costs and

4   expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194,

5   200 (2001) (citation omitted). Qualified immunity is particularly amenable to summary

6   judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

7   Under the qualified immunity analysis clarified by the Supreme Court in *Saucier*, Defendant is

8   immune from liability in this case.

9        Under *Saucier*, the trial court must first ask whether a constitutional right would have

10  been violated on the facts alleged. *Id.* at 201. "If no constitutional right would have been

11  violated were the allegations established, there is no necessity for further inquiries concerning

12  qualified immunity." *Saucier*, 533 U.S. at 201.

13       Second, assuming a constitutional violation is alleged, the question remains whether the

14  right was clearly established under the particular circumstances faced by the defendants. *Id.* The

15  contours of the clearly established right "must be sufficiently clear that a reasonable official

16  would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*,

17  483 U.S. at 640). Thus, the relevant, dispositive inquiry in determining whether a right is clearly

18  established is whether it would be clear to a reasonable officer that his conduct was unlawful in

19  the specific factual situation he confronted. *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615

20  (1999)); *see Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995). Plaintiff bears the burden of

21  proving the law was clearly established. *Davis v. Scherer*, 468 U.S. 183, 197 (1984). For the

22  right at issue to have been clearly established, it must have been clear to a reasonable officer that

23  his conduct was unlawful at the time. *Anderson*, 483 U.S. 635, 640; *Orin v. Barclay*, 272 F.3d

24  1207, 1214 (9th Cir. 2001). "Therefore, regardless of whether the constitutional violation

25  occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly

26  established' or the [official] could have reasonably believed that his particular conduct was

27  lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

28       The Supreme Court has repeatedly ruled that governmental officials are entitled to

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
Case No. C 07-4089 JSW

16

1   immunity unless "the law clearly proscribed the actions" which they took. *Mitchell v. Forsyth*,

2   472 U.S. 511, 528 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Malley v. Briggs*, 475

3   U.S. 335, 341 (1986). The qualified immunity standard established by the Supreme Court leaves

4   ample room for government officials, acting in good faith in the performance of their

5   discretionary duties, to make mistakes. *Harlow*, 457 U.S. at 800. Qualified immunity protects

6   "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. 335,

7   341. Even if the violated right is clearly established, qualified immunity shields an officer from

8   suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends

9   the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198

10  (2004); *Saucier*, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is

11  reasonable . . . , the officer is entitled to the immunity defense." *Id.* at 205.

**A.     Defendant is Entitled to Qualified Immunity Because Plaintiff Has
         Failed to Show Defendant's Actions Violated a Constitutional Right.**

14          The first step under *Saucier* is to determine whether, taken in the light most favorable to

15  the party asserting the inquiry, the facts alleged show the defendant's conduct violated a

16  constitutional right. *Saucier*, 533 U.S. at 201. As stated above, Plaintiff has not shown that

17  Defendant's actions were taken because Plaintiff filed inmate appeal CTF-05-01320. Even when

18  viewing the facts in the light most favorable to Plaintiff, there is no evidence that any actions

19  were taken because Plaintiff utilized the appeals system. Further, Plaintiff has not even pled that

20  his First Amendment rights were chilled. Finally, legitimate penological goals of institutional

21  security and order support Defendant's action to file a disciplinary report against Plaintiff.

22  Therefore, Defendant is entitled to qualified immunity, and the Court does not need to proceed

23  with the second prong of *Saucier*. *Saucier*, 533 U.S. at 201.

**B.     Defendant is Entitled to Qualified Immunity Because It Would Not
         Have Been Clear to a Reasonable Official in Defendant Davis'
         Position that His Conduct Was Unlawful in the Specific Factual
         Situation He Confronted.**

27          Assuming *arguendo* that a violation occurred, the relevant inquiry is whether it was clear

28  to a reasonable prison official in Defendant Davis' position that he violated a clearly established

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss                    *Smith v. Davis*
                                                                              Case No. C 07-4089 JSW

17

1   right.

2       While it is clearly established that a state actor may not retaliate against a plaintiff for the

3   exercise of First Amendment rights, *Mt. Healthy City Bd. of Educ.*, 429 U.S. at 283-84, a

4   reasonable official in Defendant's position would not have believed his conduct was unlawful in

5   the specific factual situation confronted here.  Defendant warned Plaintiff that there would be

6   disciplinary consequences if he did not stop his disruptive behavior, and when Plaintiff continued

7   his disturbance, Defendant prepared an incident report and a CDC-155.  A reasonable official

8   would have believed that such conduct was lawful.

9       It cannot be said that Defendant was "plainly incompetent or [ ] knowingly violate[d] the

10  law." *Malley*, 475 U.S. at 341.  As such, Defendant reasonably believed his conduct was lawful,

11  and he is entitled to qualified immunity. *Romero*, 931 F.2d at 627.  Because Defendant is

12  entitled to qualified immunity, this Court should dismiss Plaintiff's claim.

13  **CONCLUSION**

14      Plaintiff did not properly exhaust the retaliation claim before filing federal suit.  Since the

15  retaliation claim is the only cognizable claim in the Complaint, this suit must be dismissed

16  without prejudice for failure to exhaust administrative remedies.

17      Additionally, there is no evidence that Defendant retaliated against Plaintiff.  Defendant's

18  actions were supported by the legitimate penological goal of maintaining order and security,

19  therefore, Defendant is entitled to judgment as a matter of law.  Even if Plaintiff's evidence

20  presented a triable issue of fact as to the issue of retaliation, Defendant is entitled to qualified

21  immunity, because no constitutional violation occurred, and alternatively it would not have been

22  clear to a reasonable official in Defendant's position that his conduct was unlawful, if in fact it

23  ///

24  ///

25  ///

26  ///

27  ///

28

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

1    was. Therefore, Defendant is entitled to qualified immunity for the damages claim.

2

3       Dated: April 24, 2008

4                 Respectfully submitted,

5                 EDMUND G. BROWN JR.
                    Attorney General of the State of California

6                 DAVID S. CHANEY
7                     Chief Assistant Attorney General

                FRANCES T. GRUNDER
8                     Senior Assistant Attorney General

9                 MICHAEL W. JORGENSON
                    Supervising Deputy Attorney General

10

11

12

13                 CHRISTOPHER M. YOUNG
                    Deputy Attorney General
                    Attorneys for Defendant Davis

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Def.'s Not. Mot. & Mot. Summ. J.; Not. Mot. & Mot. Dismiss

*Smith v. Davis*
Case No. C 07-4089 JSW

19

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **L. A. Smith v. S.G. Davis**

No.:   **C 07-4089 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>April 23, 2008</u>, I served the attached

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
NOTICE OF MOTION AND MOTION TO DISMISS;
MOTION FOR QUALIFIED IMMUNITY**

**DECLARATION OF CHRISTOPHER YOUNG SUPPORTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**DECLARATION OF N. GRANNIS SUPPORTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS**

**DECLARATION OF DEFENDANT STEVEN DAVIS SUPPORTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Lynnard A. Smith, D-89280
California State Prison, Solano
P.O. Box 4000
Vacaville, CA 95696-4000**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 23, 2008, at San Francisco, California.

| L. Santos | | |
| --- | --- | --- |
| Declarant | | Signature |